BISCAYNE TRUST CO., EXECUTOR, ESTATE OF PHILLIP ULLENDORFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13686, 16885. Promulgated February 5, 1930.

*H. A. Mihills, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the respondent.

OPINION.

TRUSSELL: Petitioner contends that Ullendorff derived no taxable gain from the several exchanges of property as set forth in the findings of fact and relies upon the provisions of section 202 (c) of the Revenue Act of 1921 and articles 1564 and 1566 of Regulations 62.

Section 202 (c) (1) of the Revenue Act of 1921, provides:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; *but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—*

(1) *When any such property held for investment,* or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale), *is exchanged for property of a like kind* or use; * * * (Italics ours.)

Article 1566 of Regulations 62 provides in part:

(*a*) * * * The words "like kind" are defined as having reference to the nature or character of the property and not its grade or quality. Therefore under this paragraph no gain or loss is realized by one other than a dealer from the exchange of real estate for real estate * * *. The fact that any real estate involved in an exchange is improved or unimproved makes no difference, for such facts relate only to grade or quality of the property and not to its kind or class. There is excluded from the provisions of this paragraph stock-in-trade or other property held primarily for sale. Unproductive real estate held by one other than a dealer, for future use or future realization of the increment in value, is held for investment and not primarily for sale.

Under the provisions of section 202 (c) (1) of the Revenue Act of 1921 and the regulations applicable thereto, there is no question that each exchange set forth in the findings was an exchange of property for other like property, except for the exchange of the so-called Dill lease for unimproved real property. It is not necessary to determine whether the lease was exchanged for other like property and we do not pass on that question.

The record establishes that Phillip Ullendorff, now deceased, was never a real estate dealer or broker. He never secured the licenses

which Florida real estate dealers are required to have. He engaged in the meat market business until 1918 when his health failed. From about 1911 or 1912 he had been investing in real estate and after he lost his health he engaged in no business except that of managing his own property and investments. From time to time he made deals in real estate purely as an investor with the hope of realizing future increment in value. During 1922 and 1923 Ullendorff was in such poor health that it was necessary for him to employ A. D. Calkins to keep accounts of rentals as well as collect them and to take care of repairs, etc., on property owned by him and held for investment.

During the years in question, as well as the preceding years, Ullendorff held his real estate for investment and certain properties, set out in detail in the findings of fact, were exchanged for other like property for investment. We are of the opinion that no gain or loss should be recognized upon those three exchanges of real estate. The respondent erred in including in Ullendorff's gross income the amount of $7,700 for 1921 and the amounts of $16,950 and $8,850 for 1923 as profits realized upon the respective exchanges made in those years. Cf. *E. R. Braley*, 14 B. T. A. 1153.

In 1919 Ullendorff acquired a lease known as Dill lease. No consideration was paid therefor other than the regular rentals. On February 21, 1923, he exchanged that lease for lots 47, 48, and 49 in Tatum's Ocean Bay Park. The uncontradicted testimony of a real estate dealer, well qualified to testify as to real estate values in and around Miami, establishes that lots in Tatum's Ocean Bay Park had no readily realizable market value. The individual lots could not be located because they were very poorly staked out, the land was low and swampy and there were no improvements such as streets, lights, gas, etc. The land was covered with a thick growth of mangrove and palmettos. The Miami boom did not start until April, 1924, and in February, 1923, when Ullendorff acquired the three lots they had no market value. We are of the opinion that Ullendorff realized no taxable gain upon the said exchange within the meaning of section 202 (c) of the Revenue Act of 1921, above quoted, and article 1564, Regulations 62, which provides:

ART. 1564. *Exchange of property.*—Gain or loss arising from the acquisition and subsequent disposition of property is realized only when as the result of a transaction between the owner and another person the property is converted into other property (a) that is essentially different from the property disposed of, and (b) that has a readily realizable market value. Property has a readily realizable market value if it can be readily converted into an amount of cash or its equivalent substantially equal to the fair value of the property. In other words, the property received in exchange must be readily marketable at substantially its fair value in order that a gain or loss be recognized. Property which is regularly traded in in a public market has a readily realiz-

able market value in the quantities regularly traded in. Property may be salable, as in the case of a forced sale or in exceptional quantities, without having a readily realizable market value. Stock in a close corporation may or may not have a readily realizable market value, depending upon all the facts in each particular case. The question whether property has a readily realizable market value, and if so the amount thereof, is one of fact to be determined in each case in the light of all the surrounding circumstances; and attention should be called in the return to each exchange effected during the taxable year about which there could be any doubt.

During 1920 Ullendorff acquired, as an investment, a piece of property known as Whispering Pines. To maintain the value of the property it was necessary for Ullendorff to expend $1,372.62 during 1921, $980.71 during 1922, and $919.61 during 1923, for its upkeep, care and maintenance. The trees and shrubbery planted on the property at the time he acquired it needed the constant care and attention of a caretaker. Those amounts were not expended for improvements on the property, nor were they personal expenses as determined by respondent. The said amounts expended in the said years were ordinary and necessary expenses incurred in a trade or business and as such are proper deductions from gross income in each of the respective years under section 214 (a) (1) of the Revenue Act of 1921.

Whispering Pines was located in a subdivision of large estates and it was necessary for Ullendorff to erect on the property a house for the caretaker to live in so that he could give constant attention to the care and maintenance of the property. The construction of the caretaker's house was completed in December, 1921, at a cost of $4,419.55. We have found as a fact that the frame bungalow had a useful life of 20 years and accordingly a deduction for depreciation should be allowed at the rate of 5 per cent for each of the years 1922 and 1923, under section 214 (a) (8) of the Revenue Act of 1921.

*Judgment will be entered under Rule 50.*